UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| ADDIE HARPER | CIVIL ACTION NO. 14-0479 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| BIO-MEDICAL APPLICATIONS OF LOUISIANA, LLC | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Defendant Bio-Medical Applications of Louisiana, LLC's ("BMA") Motion to Dismiss on Grounds of Prematurity. See Record Document 4. The motion was filed pursuant to Federal Rule of Civil Procedure 12(b)(6) and seeks dismissal of all of Plaintiff Addie Harper's ("Harper") claims against BMA. BMA argues that Harper's claims sound in medical malpractice and that the instant action is premature, as the claims have not yet gone before a Medical Review Panel as required by La. R.S. 40:1299.41 *et seq.*, the Louisiana Medical Malpractice Act ("MMA"). See id. Harper has opposed the motion. See Record Document 6. For the reasons which follow, BMA's motion is **DENIED**.

**FACTUAL BACKGROUND**

On February 4, 2013, Harper was scheduled to receive dialysis treatment at Shreveport Regional Dialysis Center, a dialysis treatment center owned and operated by BMA. See Record Document 1-1 (Petition for Damages) at ¶ 3.00. On this date, she entered BMA's facility and fell when she slipped in water or a similar substance on the floor. See id. at ¶ 4.00. Harper alleges that she did not know of the presence of the water or similar substance on the floor until after she fell. See id. at ¶ 4.10.

On January 9, 2014, Harper filed the instant action in the First Judicial District Court in Caddo Parish, Louisiana, alleging:

> The presence of the water or similar substance on the floor created an unreasonable risk of harm to patrons by making the floor slippery.
>
> The presence of water or similar substance was created by the condition of the equipment, appliances or objects on or in the premises or by acts of employees.
>
> **THE UNKNOWN EMPLOYEE OF BIO-MEDICAL APPLICATIONS OF LOUISIANA, LLC** either knew or should have known of the presence of the water or similar substance on the floor prior to the fall of **ADDIE HARPER**.
>
> **THE UNKNOWN EMPLOYEE OF BIO-MEDICAL APPLICATIONS OF LOUISIANA, LLC** placed small pads in the floor in an inadequate attempt to soak up the water or similar substance prior to the fall of **ADDIE HARPER**.
>
> **THE UNKNOWN EMPLOYEE OF BIO-MEDICAL APPLICATIONS OF LOUISIANA, LLC** failed to exercise reasonable care by either adequately cleaning the area or providing adequate warning of the water or similar substance prior to the fall of **ADDIE HARPER**.

Record Document 1-1 at ¶¶ 4.20 - 4.60. Also on January 9, 2014, as a protective measure, Harper filed a formal request for the formation of a Medical Review Panel with the Louisiana Division of Administration pursuant to the MMA. See Record Document 4-2. BMA timely removed the action to this Court on March 3, 2014. See Record Document 1 (Notice of Removal).

Now before the Court is BMA's Rule 12(b)(6) Motion to Dismiss on the grounds that the action is premature. See Record Document 4. More specifically, BMA argues that Harper's claims sound in medical malpractice and that all such claims must first be presented to a Medical Review Panel under the MMA before they are litigated. See Record Document 4-1 at 2.

**LAW AND ANALYSIS**

I.  **Legal Standards.**

   A.  **Rule 12(b)(6) Standard.**

Federal Rule of Civil Procedure 12(b)(6) allows for dismissal of an action "for failure to state a claim upon which relief can be granted." While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations in order to avoid dismissal, the plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–1965 (2007); see also Cuvillier v. Taylor, 503 F.3d 397, 401 (5th Cir.2007). A plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. The Supreme Court expounded on the Twombly standard, explaining that a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. See Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In evaluating a motion to dismiss, the Court must construe the complaint liberally and accept all of the plaintiff's factual allegations in the complaint as true. See In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir.2009).

   B.  **Louisiana Medical Malpractice Act.**

When a plaintiff alleges claims against a health care provider but these claims are based in normal negligence law rather than the MMA, a defendant's exception (or motion to dismiss) based on prematurity should be denied. See Romero v. Willis-

Knighton Med. Ctr., 870 So.2d 474, 480 (La. App. 2 Cir. 2004). Under the MMA, all malpractice claims against a health care provider must go before a Medical Review Panel before a suit can be filed against the health care provider. See La. R.S. 40:1299.47A(1)(a) and B(1)(a)(I). Harper agrees that the sole issue in this motion to dismiss is whether her claims fall under the MMA. See Record Document 6 at 1.

Whether or not a claim falls within the scope of the MMA is a six factor test. See Coleman v. Deno, 813 So.2d 303, 315 (La. 2002). The six factors are: "(1) whether the particular wrong is treatment related or caused by a dereliction of professional skill; (2) whether the wrong requires expert medical evidence to determine whether the appropriate standard of care was breached; (3) whether the pertinent act or omission involved assessment of the patient's condition; (4) whether an incident occurred in the context of a physician-patient relationship, or was within the scope of activities which a hospital is licensed to perform; (5) whether the injury would have occurred if the patient had not sought treatment; and (6) whether the tort alleged was intentional." Id. Courts should apply these six factors to assist in determining whether a claim is a malpractice claim. See Williamson v. Hosp. Serv. Dist. No. 1, 888 So.2d 782, 791 (La. 2004).

Several courts have applied this six factor test in cases similar to the instant action; the rulings in these cases are mixed and ultimately depend upon the facts of each case and the application of the various factors to these facts. In deciding a Rule 12(b)(6) motion to dismiss, a court "may not go outside the pleadings." Colle v. Brazos County, Texas, 981 F.2d 237, 243 (5th Cir. 1993). Courts must also accept all allegations in a complaint as true, and all doubts must be resolved in favor of the plaintiff. See Iqbal, 556 U.S. at 678, 129 S.Ct. at 1949; Tanglewood E. Homeowners v.

Charles-Thomas, Inc., 849 F.2d 1568, 1572 (5th Cir. 1988). Thus, in deciding whether Harper's claims are malpractice claims by applying this six factor test, the Court will take all of the allegations in her complaint as true.

At the outset, it is necessary to discuss some of the cases in which courts have applied this test. One such case is Romero, 870 So.2d at 475, wherein the plaintiff fell and injured himself when the treadmill he was using malfunctioned and suddenly reversed direction. The court ruled that the negligence claim the plaintiff brought was not a malpractice claim under the MMA because it was unclear whether the plaintiff was using the treadmill as a part of his treatment at the facility or simply of his own volition after being advised to do so. See id. In so ruling, the court concluded that the most important of the Coleman factors was the first factor, whether the particular wrong was treatment related. See id. at 480; see also Coleman, 813 So.2d at 315.

In Sewell v. Doctors Hosp., 600 So.2d 577 (La. 1994), the plaintiff was a patient at a hospital recovering from surgery. While recovering in a hospital bed, the bed suddenly snapped from the upright position to a reclined position, causing the plaintiff to hit his head on the bedside table. See id. The plaintiff brought a strict liability claim against the defendants. See id. The Louisiana Supreme Court concluded that this claim was not a medical malpractice claim under the MMA because the statute specifically enumerated things for which a health care provider could be held strictly liable, and hospital beds were not among this list. See id. at 580. However, the Court stated in a footnote that if the plaintiff had filed a claim alleging some negligent act or omission on the part of the hospital in dealing with the patient's hospital bed, "the

healthcare provider's liability may arguably be included under the Act [the MMA]." Id. at n. 6.

In Harris v. Sternberg, 819 So.2d 1134, 1136 (La. App. 4 Cir. 2002), the plaintiff was a patient being treated for morbid obesity. The plaintiff went to his doctor's office for an appointment. See id. While being weighed on a non-medical scale that the doctor had obtained from a hardware store for the specific purpose of weighing obese patients, the scale moved and the plaintiff fell. See id. The court found that the plaintiff's weight was "a critical factor relative to [his] treatment" and it was "not outside the realm of possibility that experts could be called" to testify in the case. See id. at 1139. It also found that the plaintiff's injury would not have occurred if the patient had not sought treatment from the defendant, essentially using a "but-for" test for this element. See id. at 1140. Therefore, the court concluded that the plaintiff's claim was a medical malpractice claim under the MMA. See id.

In Stapler v. Alton Ochsner Med. Found., 525 So.2d 1182, 1183 (La. App. 5 Cir. 1988), the plaintiff slipped on some pear juice on the floor and fell while in a semi-medicated state in a restroom at the hospital.[1] The plaintiff sued the hospital, alleging that it had been negligent in allowing her to be in this medicated state, failing to train its employees, and failing to clean up unreasonably dangerous substances. See id. The court concluded that the plaintiff's claim was not a medical malpractice claim, stating that "the tenor of the petition taken as a whole presents a cause of action for ordinary

---

[1] While Stapler is a pre-Coleman case, it is factually similar in some respects to the instant action. Additionally, while the Stapler court does not cite the six factor test, nothing in the case contradicts the reasoning set forth in Coleman. Thus, while not binding, this Court considers Stapler to be persuasive authority.

negligence as opposed to a breach of a duty directly associated with [the plaintiff's] medical care." Id. at 1184.

## II.     Analysis.

As a threshold issue, BMA contends that the fact that Harper filed a formal request for the formation of a Medical Review Panel constitutes an admission that the claim could "reasonably be found within the definitions of the MMA." Record Document 7 at 2; see also Record Document 4-1 at 8. BMA points to no authority indicating that the filing of such a request has any legal significance in an action in which a court must decide whether claims are covered by the MMA. See id. Therefore, the Court will view the filing of the request as merely a prudent action taken by a careful lawyer who wants to preserve all possible avenues for recovery.

The Court will now apply the six factor test from Coleman to determine whether Harper's claims sound in general negligence law or in medical malpractice under the MMA.

### 1.     The Wrong Is Not Treatment Related or Caused by a Dereliction of Professional Skill.

Harper alleged that BMA was either negligent in maintaining the condition of its equipment, resulting in the presence of a liquid on the floor, failing to clean up the liquid (regardless of its source), or both. See Record Document 1-1. These allegations, on their face, are not treatment related allegations or allegations that are related to a dereliction of professional skill. A comparison of the facts of similar cases addressing this factor confirms that these claims are not treatment related.

BMA argues at length that the Supreme Court of Louisiana addressed this issue in its footnote in Sewell, 600 So.2d at 580, n. 6, which stated that if the plaintiff had filed a claim alleging some negligent act or omission on the part of the hospital in dealing with the patient's hospital bed rather than solely a strict liability claim, "the healthcare provider's liability may arguably be included under the Act [the MMA]." See Record Document 4-1 at 6; see also Record Document 7 at 4-6. BMA argues that this language should control in the instant action because this case involves a negligence claim on the premises of a health care provider, as did the hypothetical scenario set forth in the Sewell footnote. See id.

This argument, however, is unconvincing. First, the hypothetical scenario set forth in the Sewell footnote is dicta. See Sewell, 600 So.2d at 580; see Williamson, 888 So.2d at 789 (agreeing that the footnote in Sewell is dicta). The Williamson court also noted that Sewell "should not be interpreted to mean that any alleged negligence on the part of a health care provider will bring the claim of an unintentional tort within the provisions of the [MMA]." Williamson, 888 So.2d at 789. Moreover, at the time Sewell was decided, only three of the Coleman factors had been included in the list of factors to consider when deciding whether a claim sounds in medical malpractice under the MMA, and these factors were not applied in Sewell because the court's decision involved only a strict liability cause of action. See Coleman, 813 So.2d at 315-316 (officially adding the last three factors to the list of factors to consider); Williamson, 888 So.2d at 789, n. 4.

Finally, Sewell is factually distinguishable from the instant action. At all relevant times in Sewell, the plaintiff was continuously under the care of the hospital because he

was lying in a hospital bed, making any alleged negligence relating to the hospital bed somewhat "treatment related." Sewell, 600 So.2d 577. Here, Harper alleges that "[she] entered the . . . premises and fell when she slipped in water or a similar substance on the floor." Record Document 1-1 at ¶ 4.00. The parties disagree as to the meaning of this allegation. Harper contends that she was simply "walking through the room just as any other person whether there for treatment or other purposes" when she fell. Record Document 6 at 3. BMA contends that Harper "had been checked in and screened by one of the nurses at BMA and [had already undergone] her pre-dialysis assessment" when she fell. Record Document 7 at 3. Pursuant to the Rule 12(b)(6) standard, the Court must accept as true all the allegations in Harper's complaint. Thus, the Court accepts Harper's allegation that she fell shortly after entering the premises.

Notwithstanding, even if BMA's version of events is accepted as true, the alleged fault or negligence still appears to be unrelated to Harper's treatment. Harper's dialysis treatment had not commenced, even under BMA's version of events, because "screening" and "assessment" are preparation for dialysis, not the actual treatment itself. Unlike Harris, 819 So.2d at 1140, where the plaintiff's weight was "a critical factor relative to [his] treatment" and determining his weight was an integral part of his treatment, Harper was still in the pre-treatment phase of her visit to BMA's facility.

Additionally, a comparison of the facts of the instant action to those of Stapler reveals that even if some form of medical treatment had commenced, this fact is not conclusive on the issue of whether the wrongful conduct or omission itself is treatment related. In Stapler, 525 So. 2d at 1183, the plaintiff was a patient of the hospital at the time of her fall; as such, at least some form of medical treatment had commenced. See

id. However, the court concluded that "the tenor of the petition taken as a whole" presented "a cause of action for ordinary negligence." Id. The instant action therefore presents an even stronger case than the somewhat factually similar case of Stapler in that its allegations are based on general negligence, not medical malpractice. Additionally, the foreign substance in the instant matter was on the floor of the BMA facility traversed by employees and other users of the building. In conclusion, because the complaint alleges that the plaintiff had not yet commenced any medical treatment at the time she fell, the MMA does not apply. See id.; see also Record Document 1-1.

### 2. The Wrong Likely Does Not Require Expert Medical Evidence to Determine Whether the Appropriate Standard of Care Was Breached.

Again, Harper alleged that BMA was either negligent in maintaining the condition of its equipment, resulting in the presence of a liquid on the floor, failing to clean up the liquid (regardless of its source), or both. See Record Document 1-1. The Coleman court stated that alleged wrongs that are examples of "obvious negligence" that could be evaluated based on "common knowledge" do not necessitate expert testimony. Coleman, 813 So.2d at 317 (internal quotations and citations omitted). The alleged wrongs in the instant action do not require expert *medical* evidence to determine whether the standard of care was breached. Expert *medical* testimony is not needed to determine if medical equipment had leaked, or to determine whether there was liquid on the floor that should have been removed. This element, therefore, strongly favors the conclusion that Harper's allegations do not constitute medical malpractice claims covered by the MMA.

### 3. The Pertinent Act or Omission Did Not Involve Assessment of the Patient's Condition.

As the pertinent alleged omission was the negligent failure to maintain the condition of the floor, the negligent failure to clean up a spilled liquid, or both, these alleged omissions do not involve assessment of the patient's condition. See Record Document 1-1. Under Harper's version of events, there was no assessment of her condition prior to her fall, nor was there any such assessment being conducted at the time of her fall. See id. Even if BMA's version of events were accepted as true, the alleged omission itself did not involve assessment of the patient's condition, as the alleged omission only involved the negligence maintenance of medical equipment, the cleaning of the floor, or both. See id. Thus, this element also favors the conclusion that Harper's fault allegations do not constitute medical malpractice claims.

### 4. The Incident Did Not Occur in the Context of a Physician-Patient Relationship, Nor Was the Incident Within the Scope of Activities the Facility Was Licensed to Perform.

Harper alleged that her fall occurred when she had done nothing more than walk into the facility. See Record Document 1-1. Therefore, the alleged wrong did not occur within the context of a physician-patient relationship or within the scope of renal dialysis activities the facility was licensed to perform. Harper simply had no type of medical interaction with the medical staff of the facility at the time the incident occurred. Thus, this element also favors the conclusion that Harper's fault allegations do not fall within the purview of the MMA.

### 5. The Injury Would Not Have Occurred If the Patient Had Not Sought Treatment.

Harper was at BMA's facility for the purpose of receiving dialysis treatment. See Record Document 1-1. Courts have traditionally used a basic "but-for" test, which the Supreme Court of Louisiana has questioned as potentially "overly facile," to determine whether the injury the plaintiff suffered would have occurred if the plaintiff had not sought treatment. See Harris, 819 So.2d at 1140; Williamson, 888 So.2d at 791. Under this test, it is clear that Harper would not have suffered any injuries had she not sought treatment from BMA. She simply would not have even been on the premises "but-for" her dialysis treatment. Therefore, this overly-simplified factor supports a conclusion that Harper's allegations sound in medical malpractice.

### 6. The Alleged Tort Was Unintentional.

Harper alleged that BMA was negligent. See Record Document 1-1. Therefore, the alleged tort in the instant action is unintentional. For a claim to be a malpractice claim under La. R.S. 40:1299.41 *et seq.*, the plaintiff must allege that the defendant committed an unintentional tort. The application of this factor is inconclusive, however, as to whether the claims in the instant action qualify as medical malpractice claims.

### CONCLUSION

At least four of the six factors Coleman test, including the first and most important factor, considering whether the particular wrong was treatment related, strongly support the conclusion that Harper's claims are not medical malpractice claims. Thus, this Court finds that Harper's claims are not covered under the Louisiana Medical Malpractice Act. Instead, Harper's claims sound in general tort law. BMA's Rule

12(b)(6) Motion to Dismiss on the basis that the action is premature is, therefore, **DENIED**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 7th day of August, 2014.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE